Good afternoon, your honors. My name is Richard Kateman, and I am counsel for the appellant Monique Dollonne. And I appreciate the opportunity to be able to present the appellant's argument on this appeal. Thank you. Your honors, I'll take the brief time we have for oral argument to talk about the two of the most important issues, I believe, that exist in this case that you have to decide. And those have to do with where the constitutional issues, the constitutional rubber meets the road of the everyday existence of Ms. Dollonne's life. In this particular case, it has to do with whether or not the issues of qualified immunity apply to the defendants in the context of whether or not the laws that are alleged to have been violated by the Ventura County Unified School District and the individual defendants named were in fact clearly enough established to be able to subject the defendants to liability without the defense of qualified immunity at least being raised at this stage. I would like to point out to the court that as recently as a week ago, the United States Supreme Court clarified the rule in Ashcroft v. Al-Kid about what represents a clearly established law. And in this case, it only, and in that case, and applicable to this case, it is only appropriate and necessary for the appellant to be able to establish that the law, the challenged conduct violated a law that was sufficiently clear. Not, it doesn't have to be absolutely clear, but sufficiently clear that every reasonable official would have understood that what he was doing violated a right of, in this case, the appellant. And in this case, we have the issue about whether or not the appellant can be excluded from the school grounds, the Montalvo Elementary School grounds in the manner in which the school district officials did so. And the reason that's important is because that act of excluding her, wrongfully we argue, from the school grounds was the foundational basis upon which the school used to effect their, her arrest on the basis of trespass for the purpose of preventing her from her, exercising her constitutional rights of free speech and free association. Counsel, isn't there an allegation that she was unwilling to sign in, that she was on the school grounds? There was a defense of that in the paperwork provided by the defendants. There was an allegation in the letters, I believe, one of the letters that she refused to sign in, and there was also in the officer's report, there was an investigation done by him after the fact, because the teachers told him that there was a refusal to sign in. But that was only one of the instances that was used as a claim. And I emphasize a claim because what that allegation represents is a challenge to the facts by the defendants. It doesn't challenge the pleadings, which have to be accepted as true for the purposes of the motion to dismiss. What they did was offer a factual defense in connection with the motion to dismiss, in effect trying to convert this particular hearing into a motion for summary judgment rather than a motion to dismiss. And that refusal to sign in, nevertheless, doesn't rise to the level of what they did wrong vis-a-vis the Braxton case by the California Supreme Court. And that is the pivotal case for the purposes of the Court's analysis about whether or not there was clearly established law. But only established law, though, for what? Are you talking about a due process violation? Are you talking about the First Amendment violation? I'm talking about a due process violation. Where do you allege due process in your complaint? I didn't see that anywhere in the First Amendment complaint. Well, we allege that there was a violation of the 14th Amendment with respect to the deprivation of the right, of the right of free speech. And we didn't allege the specific act of the due process violation in the complaint, but the very fact that she wasn't given a pre-exclusion hearing as required by Braxton. In other words, in the act. Is that in your complaint, though? Your complaint to me is sort of a First Amendment. I mean, it's sort of a shotgun approach. You have a lot of allegations in there. But it seems to be really focused on the First Amendment, right? Right to petition, right to association, right to freedom of speech. I didn't see anything in there that would suggest that opposing counsel would be on notice that there was a due process, or even the district judge, that there was a due process claim. Your Honor, thank you for that, for making that point. I would respond and argue that this is the kind of situation where the officials were already on notice that what they were doing was in violation of the due process rights of the appellant from the standpoint that they knew they were obligated as a matter of law to give her a pre-exclusion hearing. And they didn't do that. At the very least, and that was established by Braxton in 1973, on the face of the statute, on the face of the statute, it says that the person excluded must be given a hearing within 14 days of the exclusion order. Braxton said that's not enough. What if I agree with my colleague and I suggest that I can't find any due process allegation in your complaint? Are there any other acts upon which one can find a constitutional violation that's worthwhile for us to look at under this review? Yes, Your Honor. I mean, my worry is that you're going for due process and I couldn't find anything. So I guess I'm trying to figure out where are you going. Are you going to ‑‑ are we looking at a freedom of speech? We are looking at freedom of speech. We're also looking at a Fourth Amendment unlawful seizure. Okay. Let's talk about freedom of speech. What, I mean, what are you really alleging as to freedom of speech? I'm alleging that the appellant was specifically ordered not to speak to other parents outside of the school, let alone on the school, was specifically ordered not to associate with other parents outside of the school or on the school. She was excluded from her statutory liberty interest of being on the school for any purpose that was not disruptive and certainly not creating any imminent risk of physical or property, harm to property. When you go back to liberty interest, you sound like you're doing a full circle of the due process. So staying on the First Amendment track, it's easy to allege First Amendment. And that's sort of what the complaint does in a very broad sense. But I'm trying to figure out through the briefing before the district court and then us now what doctrine under the First Amendment, I think that's what Judge Smith is getting at, what doctrine applies here. And you seem to be relying on prior restraint in your briefing. I am. I specifically said that in the appellant's brief. In other words, it is prior restraint that was actually conducted here that was alleged in the First Amendment complaint, as well as supported by the documents given by the defense in terms of the letters that specifically ordered Ms. not to speak about subject X, which was her concerns about whether or not the school was violating the No Child Left Behind Act. And was the prior restraint issue in the complaint and raised before the district court? Getting back to that same issue I had with due process, was that really before the district court? There was a broad First Amendment claim. But did it ever sort of narrow down to where there was a clear delineation that we're talking about prior restraint? Not using that term, no. But I believe that it was sufficiently pled. I did not use the term prior restraint. I guess my worry is that we've got to have something that was in front of the district court for us to be able to get to something to help you. And I don't really believe prior constraint was in front of the district court. So I'm trying to figure out what ground you want us, what's your best argument on what ground other than due process grounds you want us to really focus here? Well, that would be the two grounds of prior restraint and unlawful seizure. And the prior restraint being, and it was in front of the district court because the defense brought it in front of the district court, was the issue of the specific orders in the letters that were used as the basis for the exclusion from the school, the letters by the administrator and the general counsel of the VSD, the two named defendants, Mr. Morris and Mr. Austin, that said you are ordered to do the following. You may not do the following. Are you really asking us then to look at very specifically whether what statute it is that gives you the right to be on the grounds, whether schools have to give you access, whether the California Education Code 5101 requires you to have formal requests, whether it's a misdemeanor to materially disrupt classwork, are you really going at that issue? Yes, sir, I am. I am specifically because that issue is what the school district used as the basis for establishing the alleged right on their part to have Ms. DeLone excluded and arrested for a violation of exclusion order, that unless the court examines whether or not Ms. DeLone had a right to be on the campus that they unlawfully and wrongfully abridged as the foundation for their having her arrested and excluded and arrested after that, there wouldn't be any violation. Without that, that's where the violation of the prior restraint occurs, because they said you may not do these things, you're excluded from campus, and you may not speak to these parents even outside of the campus, you may not associate with them, and if you do these things, that's going to be the basis for our excluding you from the campus in the future. They then excluded her on that grounds, and then they had her arrested when they said she violated the exclusion order. And so without an examination of that law, the trespassing law, and the rights that grant her the right to be on campus that they use as the basis for the trespassing law, the court can't adequately examine whether or not the First Amendment complaint is supportable. Your time has expired. Thank you, Your Honor. Thank you. Good afternoon, Your Honors. My name is Ed Loskamp, and I'm here on behalf of the appellees of Ventura Unified School District. Could you speak a little louder, please? I'm sorry, Judge Fletcher. I'm here on behalf of the Ventura Unified School District and the employees, Principal Michelle Dean, Mr. Austin, the general counsel for the school district, and Mr. Morrison, a superintendent at the school district. You may want to pull that mic down to you so that you can speak right into it because we can hear you barely, and it will really be sad for Judge Fletcher. All right. I apologize for my voice. It sometimes does drop down. The issues in this case, as the court has already acknowledged by its questionings, I think are quite simple. Whether or not there's an unfettered right for a parent to enter and remain on a school campus and whether that is a constitutionally recognized right, and then when we get into the qualified immunity areas, whether any case has found that right for a parent to exist to such an extent that any reasonable school official would recognize it and know that they weren't violating it if they asked someone to stay away from school. Let me just first of all touch on the Eleventh Amendment issues. This case was decided on several grounds, the first of which was the Eleventh Amendment. Obviously, this court is aware of the Eleventh Amendment application to school districts by way of the Bellinger decision back in 1992. The appellant would like the court to believe that somehow Bellinger and that Eleventh Amendment immunity no longer applies to school districts or to their employees acting in their official capacity, but there are no cases that have ever said that since 1992. An express waiver would have to be established by the state to allow such a waiver of the Eleventh Amendment. There has been none. There is no unequivocal waiver. In their papers, they talk about the Tort Claims Act, but that's allowing the citizens of the state to sue the state for certain varied things. It does not allow a waiver of an Eleventh Amendment. And then lastly, the appellant has made no offering when they did discuss it very briefly with Judge Reel, no offering that they would have any evidence to support such a waiver. There is a brief discussion about the Monell claim. However, I think this court, and particularly this panel, has already addressed that last year in the Krinsky decision. Monell would apply in this situation as well. In fact, there are several parallels between our case and the Krinsky case with regard to the Eleventh Amendment issues and also with regard to the qualified immunity issues. Regarding, then, the qualified immunity issues, the basis of the claim that the appellant makes and which they recognize and do say in their reply papers is, with regard to the 626.4 code section of the Penal Code, which authorizes principals and school administrators to revoke. You've got to speak up. I was about to go like this. You're slowly drowning. Which authorizes principals and their designees to revoke the consent of persons from a school campus when that principal or designee has reasonable belief that the person is disruptive to the campus. The appellant would like the court to believe that that is unconstitutional, that a parent has an unfettered right to attend a campus. That is not so. In fact, there are other code sections. Well, he's saying under Braxton, really. Right. There's this. Yeah. You have to read 626 in conjunction with Braxton. Yeah. As to Braxton, Braxton we have to take into context when it was decided and the reading of 626.4 when Braxton was decided. At that time, Braxton in 1973 dealt with San Francisco State and the student unrest that occurred during that time. 626.4 at that time addressed itself only to universities. It did not address itself to schools. Now, the Braxton court, the Supreme Court in Braxton, was asked to issue a writ of prohibition against the school officials to prevent them from revoking consent to the students. These are important issues. Students as opposed to parents, university as opposed to an elementary school district. The court did not say that this was unconstitutional. No, rather the court narrowly construed it. It upheld the constitutionality of the section, but said we should narrowly construe this in a university setting where freedom of speech is a give and take, and that's all part of it, especially when you're dealing with the students who have the right to be there. The following year, in 1974, the legislature added schools to that code section. So now... But they didn't attempt to discuss Braxton at all or the issues raised by Braxton? No. They didn't amend the statute to make it more narrow or anything of that sort? Braxton did not require it to be amended to make it more narrow. Braxton said we choose to narrow our reading of it to see if it would be constitutional, and they felt it was because each case involves its own particular facts. As I said, with Braxton, students, university. You have to have the context of now we are dealing with a non-student, a parent. Now, under the other code sections, 51-101 and 48... I forgot the other one. The legislature requires that even a parent who wishes to come onto campus and observe, for instance, the teaching of their child, must ask. They must get consent. And if a parent, even, is disruptive, that parent can be arrested on a misdemeanor charge under those other sections. Counsel, I want you to address the contentions by the school district that she could not speak to other parents and could not communicate in several ways. That seems to me perhaps to be a difficult point for you. That might be, Judge Fletcher, if not for the fact that, number one, that was in a single solitary letter by Mr. Morrison in October of 2003. That was time-barred. This matter was filed in February of 2006. Two-year statute of limitations bars that. There are no allegations, even if we look beyond that, there are no allegations of the school going out of the school grounds to say, Hey, you can't talk to people. No, that's not allegations whatsoever. They simply raised it as an illustration, if you will. The letter that then revoked her consent to be on campus was... May, at the end of school year in 04, and then the one that we are here about today, the January 12, 05 letter. Those letters were written by the school's counsel, and they specifically addressed the issue of you have been disrupting class, you have not been checking in as required countless times. In fact, it even alleged and even said that despite an agreement with your prior attorney, you violated those agreements. Thus, we have found it necessary to issue this revocation of consent. At the time that she returned to campus and then was approached by the officer who cited her, not arrested, cited her for it, she acknowledged having received the letter. So she knowingly returned to campus, despite the statute saying if you knowingly return to campus after getting the revocation, you are subject to prosecution. One more thing. With regard to due process, there is no requirement that she be giving a hearing before the letter or before the revocation of consent. The statute provides that it only runs for 14 days and that the recipient of the revocation may challenge it with a hearing which the school has to provide within seven days. There are plenty of adequate due process procedures in place in the statute. However, Appellant didn't elect to do those. Instead, she returned to school again. Roberts. Thank you for your argument. Roberts. I think we should allow a couple minutes for rebuttal. I'd be glad to do that. Thank you, Your Honor. Your Honors, the argument posed by Appellee's counsel that there were adequate due process safeguards provided by the statute simply don't comport with the fact of the case law that says that, as cited in my brief, that says that the school district must provide someone who is excluded with an address to send their notice to that Counsel Loskamp was talking about. They did none of that. Nor does it comport with the fact that Braxton, years earlier, while it dealt only at that time with a university context, doesn't mean that it was limited to a university context. In fact, the content of the statute does not apply outside. Reeves says one of the reasons Braxton doesn't apply is because Reeves dealt with high school, not because it was an outsider, but because it dealt with a high school, not a college campus, where you want to encourage open debate. That's right. But Braxton made it clear that they were talking about the effect of the statute and were not narrowly constraining it to the university context, and neither did Reeves when it said Braxton is hereby limited to that university context. The content of the actual opinion in Braxton makes it clear that the statute itself is constitutionally overbroad and vague, period, not just in the context of the university setting. Yes, they did focus and argue about how important free speech was in that context, but that doesn't mean it was limited to that context. It was an application to the statute as a whole. Okay. Thank you for your argument. Thank you. Appreciate it. Case 09-55260, the Lone versus Ventura Unified School District is submitted. Thank you very much, counsel, for being here today. And, again, we thank our good friend here for being here and from Hawaii. This court is adjourned. All rise. This court is adjourned.
judges: Seabright, Fletcher B. , Smith N. R.